## BELL & Others *v.* FIRST NATIONAL BANK OF CHICAGO.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Submitted October 30, 1885.—Decided November 16, 1885.

A bill of exchange, dated March 4, payable in London, 60 days after sight, drawn in Illinois, on a person in Liverpool, and accepted by him " due 21st May," without any date of acceptance, was protested for non-payment on the 21st of May. In a suit against the drawer, on the bill, it was not shown what was the date of acceptance: *Held*, That the bill was prematurely protested, it not appearing that days of grace were allowed.

This suit was brought in the Circuit Court of the United States for the Northern District of Illinois, by the First National Bank of Chicago, as indorsee, against the plaintiffs in error, copartners under the name of Humphrey Bell & Co., as the drawers of three bills of exchange. One was in this form:

"Exchange for £850.0.0. CANTON, ILL., March 4th, 1878.

Sixty days after sight of this first of exchange (second and. third unpaid) pay to the order of ourselves, in London, eight hundred and fifty pounds sterling, value received, and charge to account of

HUMPHREY BELL & Co.

To Mr. W. D. Turner, Jr., Liverpool."

Across the face of the bill, as sued on, these words were written:

"Accepted. Payable at Messrs. Barclay & Co., bankers, London. Due 21st May. W. D. TURNER, JR."

The foregoing description applies to each of the other two bills, and the writing across its face, except that each was for £800, and one was dated March 11, 1878, and had in the writing across its face "Due 31st May," instead of "Due 21st May."

The declaration was in assumpsit. Each of the defendants separately pleaded non-assumpsit, and there were various special pleas, on which issue was joined. At the trial the court directed the jury to find a verdict for the plaintiff for $10,937.13 damages, which was done, and for that amount, with costs, a judgment was rendered for the plaintiff, to review which the defendants brought this writ of error.

After making certain necessary proof, the plaintiff offered in evidence the three bills, and a notary public's certificate of protest accompanying each. The bill of exceptions said: "The paper introduced and read in evidence as the certificate of protest of said £850 draft states, that on the 21st day of May, 1878, at the request of the City Bank of London, the notary public exhibited the original bill of exchange, before copied, to

a clerk in the banking house of Messrs. Barclay and Company, bankers, London, where the said bill is accepted payable, and demanded payment of its contents, which demand was not complied with, but the said clerk thereunto answered, 'No orders,' whereupon the said notary protested the said draft against the drawers, acceptor, and indorsers. The other two papers introduced as certificates of protest of the other two of said drafts are in the same form, and state the protest to be in each case the same day they are stated to be due in the acceptance thereof." When the drafts and certificates of protest were offered in evidence, the defendants objected to the admission of each of them, but the objection was overruled, and they were read in evidence, to which the defendants excepted.

The bill of exceptions purported to set forth all the evidence offered by either of the parties on the trial, but there was no evidence showing any presentation for payment of any one of the bills on any other day than that stated in the acceptance as the day it was due, nor was there any evidence showing when the acceptances were written by Turner, although his deposition taken at Liverpool, sixteen months before the trial, was read in evidence by the plaintiff. All that was said on the subject in that deposition was: "The last three bills for £800, £850, and £800, drawn by defendants on me and accepted by me, and which matured on the 21st May, and 31st May, 1878, were dishonored."

At the close of the evidence on both sides, and before the charge, the defendants requested the court to instruct the jury as follows, among other things: "That the bills of exchange sued on in this case are what are known to the law as foreign bills; that, upon such bills, three days, called days of grace, are allowed by law after the day on which they become due or mature; that such a bill does not become due, in fact or in law, on the day mentioned on its face, but on the last day of grace; that, unless such bills are duly protested on the last day of grace (or on the second day, if the last day be Sunday), such protest is not duly made, and the drawers and indorsers are thereby discharged from liability upon such bills. That, if the jury believe, from the evidence, and under the instructions of

the court, that the bills of exchange sued on in this case were not protested upon the last day of grace (or upon the preceding day, if the last day fell on a Sunday), then the verdict of the jury must be for the defendants." The court refused to instruct as requested as to either of the above points, and the defendants excepted to each refusal.

The court then charged the jury that the plaintiff was entitled to a verdict, and directed them to render a verdict for the plaintiff for $10,937.13 damages, which was done. To such ruling and direction the defendants excepted. In the charge set forth in the bill of exceptions, the views of the court on the questions embraced in the instructions so requested and refused, were given in these words: " Several defences are urged against the plaintiff's right to recover. First, That the bills were prematurely presented for payment, and protested; that is, as I have said, the bills are payable sixty days after sight, they were accepted by Turner, and, by the terms of the acceptances, were made payable, the two first on the twenty-first, and the last on the thirty-first of May, 1878, and were protested for non-payment on the days on which they were respectively made payable. The defendants contend that, as the law allows three days of grace on all bills of this character, they should not have been presented for payment, or payment demanded, until three days after the date named in the acceptance, and that, therefore, the protests are void and inoperative. . . . As to the first point made, that the bills were prematurely protested, which is equivalent to saying they were never protested at all, this defence raises a question of law upon undisputed facts. The bills each appear on their face to have been accepted by Turner, on whom they were drawn, payable, the two first on the twenty-first, and the last on the thirty-first of May, 1878, and were protested for non-payment on that day. There is no proof in the record, nor on the bills, nor has any been offered, tending to show when Turner first saw these drafts, that is, when they were presented to him for acceptance. The law applicable to these bills, giving sixty-three days from the time they were so sighted until they were due— that is, sixty days and three days' grace—is unquestioned, and

admitted to be the law governing the rights of the parties to this paper. This acceptor saw fit to make his acceptance payable on a day certain, and I am of opinion that the court must hold that, by the terms of this acceptance, he intended to, and did, make the bills payable, without further days of grace, on the days named in his acceptance; and, therefore, the bills were properly protested for non-payment on the twenty-first and thirty-first days of May."

. *Mr. O. H. Horton* for plaintiffs in error.

*Mr. H. A. Gardner* and *Mr. Charles A. Dupee* for defendant in error, in their brief argued several points raised by the assignments of error: but the following only is important, in view of the opinion of the court.

The first error assigned is that, " The court erred in holding that days of grace were allowed, and that the bills of exchange sued upon were protested in due time." The only contention of plaintiffs in error in this regard is, that as the law allows three days' grace on said bills, they were not due and should not have been presented for payment until three days after the dates named in the acceptances, and that the protest hence was void and inoperative. In case of a bill payable a certain number of days after sight, the acceptor usually does, and always should, state the date. 1. Parsons on Notes and Bills, 282. Unless the date of acceptance, or the date when the bill was due, as to the acceptor, appears by the acceptance, the bill affords no evidence when it should be presented for payment, and the embarrassment of a resort to parol evidence arises. It will not be presumed that the acceptor intended such a result. This bill, on its face, was made payable sixty days after sight. The law allowed three days' grace, so that the bill was not actually due or payable till sixty-three days after sight. The acceptor might, in his acceptance, state the date of acceptance, or he might calculate when, by adding the sixty-three days of acceptance, it would be due. He plainly did the latter, and declared the drafts to be due, two on May 21, and the third May 31. His declaration that the bills were due May 21, was

a declaration that the sixty days after sight and the three days of grace expired on that date; since otherwise the bills were not due. On the day the bills were so due they were presented and protested.

When a bill at sixty days' sight was accepted on September 14, payable November 16, it was held that November 16 was indicated by the acceptor to be the absolute date of payment, he having intended to allow for grace in his calculation, and that presentment on that day was necessary. 1 Daniel's Neg. Instr. § 633 ; *Kenner* v. *Creditors*, 7 Martin La. N. S. 540. As the language of Turner, the acceptor, was equivalent to saying that sixty-three days would terminate on May 21 and 31, and as he has testified that they did mature on those days and were then dishonored, there was here no disputed fact for the consideration of the jury. The authorities cited by plaintiff in error to this point are not inconsistent with these positions. They are the following: *Bank of Washington* v. *Triplett*, 1 Pet. 25, 31. The above case simply states the elementary proposition, that a bill does not become due until the last day of grace. When the acceptor by his acceptance has declared the bill to be due May 21, he has declared that to be the last day of grace. *Cook* v. *Renick*, 19 Ill. 598. The above case simply held that days of grace, as recognized by the law merchant, are allowed in Illinois; that a bill with a day of payment appointed on its face is not due until the third day thereafter. *Perkins* v. *Franklin Bank*, 21 Pick. 483. In the above case, the note was dated December 7, 1836, and was payable by its terms " in seven months." As, under the law merchant, a " month " always signifies a calendar month, the seven months expired July 7, 1837. It was contended that grace should have been allowed on the note, and that the action was premature. On the margin of the note was written " due July 7, 1837." It does not appear when or by whom it was written, and it was not a part of the note. The statute provided that on all promissory notes payable at a future day certain, in which there was not an express stipulation to the contrary, grace should be allowed. It was contended that the marginal note was such a stipulation. It was held that the

seven months named in the note had not expired until July 7, and, as the action was brought on that day, it was plain that grace had not been allowed, and that the marginal note, which the evidence showed might have been placed there for convenience as to casting interest, entry on the books, &c., was not intended to be, and was not, such a stipulation. *Montgomery County Bank* v. *Albany City Bank*, 8 Barb. 396; *S. C.* on appeal, 3 Seld. 459. The above cases relate to the rights of parties where presentment for payment was not made at maturity. We do not conceive them to be applicable here. *Bowen* v. *Newell*, 8 N. Y. 190. This was an action on a check dated October 5, directing a bank cashier to pay $2000 "on the 12th inst." The court held that days of grace should have been allowed on the instrument, and that it was not properly demanded and protested on the 12th, any more than it would have been if made payable seven days after date. The correctness of the decision we do not question. When a bill, by direction of the drawer, is made payable at a certain time, the law merchant adds to the time three days of grace. When the acceptor takes the time fixed by the drawer and the three days' grace, whereby the bill as to him is fully due, he is not entitled to three days' further grace. *Ivory* v. *Bank of Missouri*, 36 Missouri, 475. This case was substantially as the preceding. *Hoover* v. *Wise*, 91 U. S. 308, 313; *National Bank* v. *City Bank*, 103 U. S. 668, 670. The above cases are not to the point in controversy.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. He stated the facts in the language above reported, and continued:

It is contended for the plaintiffs in error, that the bills were prematurely protested, and the drawers were thereby discharged, because it does not appear that three days of grace were allowed, and that the court erred in ruling otherwise.

It was said by CHIEF JUSTICE MARSHALL, in delivering the opinion of this court, in 1828, in *Bank of Washington* v. *Triplett*, 1 Pet. 25, 31: "The allowance of days of grace is a usage which pervades the whole commercial world. It is now uni-

versally understood to enter into every bill or note of a mercantile character, and to form so completely a part of the contract, that the bill does not become due, in fact or in law, on the day mentioned on its face, but on the last day of grace. A demand of payment previous to that day will not authorize a protest, or charge the drawer of the bill. This is universally admitted, if the bill has been accepted."

The days mentioned in the acceptances in this case, as those on which the bills would become due, are the 21st and 31st of May respectively, and there is nothing to indicate that those days are the last days of three days of grace, computing sixty-three days from the several days of the writing of the acceptances. We are of opinion that it must appear affirmatively, in the case of bills and acceptances like those in question, that the acceptor, in designating the day of payment by the word "due," included the days of grace, or the day so designated cannot be regarded as the peremptory time for presentment, without any additional allowance.

Blackstone says, 2 Com. 469, that, where an accepted bill is not paid "within three days after it becomes due (which three days are called days of grace)," it may be protested for non-payment. In Chitty on Bills, p. 374, it is said, that where a bill is payable at a certain time after sight, it is not payable at the precise time mentioned in the bill, but days of grace are allowed, and, p. 376, that they are always to be computed according to the law of the place where the bill is due, which in England, p. 375, gives three days. CHANCELLOR KENT says, 3 Com. 100, 101, that "three days of grace apply equally, according to the custom of merchants, to foreign and inland bills and promissory notes;" and that "the acceptor or maker has within a reasonable time of the end of business or bank hours of the third day of grace, (being the third day after the paper falls due,) to pay."

BARON PARKE, in *Oridge v. Sherborne*, 11 M. & W. 374, 378, states the rule very tersely, in saying that days of grace are to be allowed in all cases where a sum of money is by a negotiable instrument made payable at a fixed day.

Acceptances like those in question, made upon bills payable

so many days after sight, are of rare occurrence. But no reported case has been found in England or in this country where such an acceptance has been held to have included, by mere force of its words, *ex vi termini*, the days of grace.

Some cases may here be referred to which go to support the conclusion. at which we have arrived. In *Griffin* v. *Goff*, 12 Johns. 423, in 1815, a promissory note, dated August 12, was made payable on the 1st of December then next, and it was held that the indorser was discharged because payment was demanded of the maker on the 1st of December, and not on the 4th.

In *Kenner* v. *Creditors,* 7 Martin La. N. S. 540, in 1829, a bill drawn at 60 days' sight was accepted by an acceptance which was dated September 12, and made payable on November 14, and was protested on the latter day. It was alleged that the holders had lost recourse on the drawers, (1) because the acceptance was made for payment on the 63d day after sight instead of the 60th; and (2) because it. was protested on the day of payment instead of the last of the days of grace. But the court held that the 14th of November was the peremptory day of payment, and not the day from which the days of grace were to be reckoned, because it appeared from the face of the bill that the days of grace were included between the 12th of September and the 14th of November; that the acceptance was according to the tenor of the bill; and that the protest was timely. The view taken was, that a dated acceptance is not vitiated by the express designation of a day of payment, when that day is designated according to the tenor of the bill; and that, when it appears, from a comparison of the tenor of the bill, the date of the acceptance, and the day designated for payment, that the latter is the third after the expiration of the days after sight, the day thus designated is the peremptory day of payment, the acceptance is according to the tenor of the bill, and. the protest on the day expressly designated is timely. In *Kenner* v. *Creditors*, 8 Martin La. N. S. 36, another case, decided a week after the former one, the acceptances, which were of bills drawn at 60 days' sight, were not dated, but were made payable on a day named. Proof as to the day

of acceptance was admitted, and that being proved, it was held that the case fell under the rule in the case in 7 Martin, because it clearly appeared that both the days of sight and those of grace had been computed and included between the date of acceptance and that designated as the day of payment. These views were affirmed in another case, in 1830. *Kenner* v. *Creditors*, 1 Louisiana, 120.

In *McDonald* v. *Lee's Administrator*, 12 Louisiana, 435, in 1838, a note dated May 5, 1835, payable on the 5th of November, 1837, " without defalcation," was held to be payable on the 8th of November, 1837, and not before.

In *Perkins* v. *Franklin Bank*, 21 Pick. 483, in 1839, a bank post note, dated December 7, 1836, was made payable in seven months, with interest "until due and no interest after." On the margin were written these words: "Due July 7, 1837." It was held that the bank was entitled to grace on the note; and that the memorandum on the margin was not an express stipulation in the note that it should be payable without grace, within a statute allowing grace in the absence of such a stipulation. In delivering the opinion of the court, CHIEF JUSTICE SHAW said : " Grace is an allowance of three days to the debtor, to make payment, beyond the time at which, by the terms of the note, it becomes due and payable." In regard to the memorandum, "Due July 7, 1837," he said : "It shows when the note is to become due, and in this respect corresponds with the stipulation in the body of the note. The time it becomes due being fixed, the statute gives three days from that time for payment, under the term 'grace,' unless the contrary be expressly stipulated." A like decision was made in *Mechanics' Bank* v. *Merchants' Bank*, 6 Met. (Mass.) 13, in 1843.

In *Bowen* v. *Newell*, 4 Seld. 190, in 1853, it was held, that a negotiable draft on the cashier of a bank, dated October 5, directing him to pay a specified sum on October 12, could not be presented for payment, so as to hold the drawer and indorser, until October 15.

In *Cook* v. *Renick*, 19 Ill. 598, 602, in 1858, it was said, that by the common law, as adopted by the legislature of Illinois, " a bill of exchange payable on a given day does not mature

till three days after the day appointed on its face for its payment."

In *Coffin* v. *Loring,* 5 Allen, 153, in 1862, it was held that the maker of a note which is payable by instalments, at future times certain, with interest, is entitled to grace on both the principal and the interest ; and that the condition of a mortgage given to secure the payment of the same sums and interest, at the same times, is not broken until the expiration of the grace which is allowed upon the note. On the same principle it was decided in *Oridge* v. *Sherborne,* *ubi supra,* that the maker of a promissory note payable by instalments on days named in the note was entitled to days of grace on the falling due of each instalment.

The case of *Ivory* v. *State Bank,* 36 Missouri, 475, in 1865, was like that of *Bowen* v. *Newell,* *ubi supra.* A negotiable draft on a bank, dated October 12, directing it to pay a specified sum on October 22, was held to be payable on October 25, and not before.

The principle deducible from all the authorities is, that, as to every bill not payable on demand, the day on which payment is to be made to prevent dishonor is to be determined by adding three days of grace, where the bill itself does not otherwise provide, to the time of payment as fixed by the bill. This principle is formulated into a statutory provision in England, in the Bills of Exchange Act, 1882, 45 & 46 Vict., c. 61, § 14.

In the present case, the time named in the acceptance after the word " due " can be regarded only as the time of payment fixed by the bill, to which days of grace are to be added, and not as a date which includes days of grace. This view goes to the foundation of the action, and makes it unnecessary to examine any other question, and leads to the conclusion that

*The judgment must be reversed, and the case be remanded to the Circuit Court, with a direction to award a new trial.*