## STEARN et al. v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit,
April 12, 1927.

No. 2560.

1. **Criminal law ⬳1167(1)—Post office ⬳ 48(4⅛)—Indictment for use of mails to defraud by soliciting money for prosecution of fictitious claim against government held sufficient, and reference therein to "victims" not prejudicial (Penal Code, § 215 [Comp. St. § 10385]).**

Indictment under Penal Code, § 215 (Comp. St. § 10385), for use of mails to defraud by soliciting money for prosecution of large, but fictitious, claim against the government, *held* sufficient, nor was its use of the word "victims" prejudicial to defendants.

18 F.(2d)—30

2. **Criminal law ⬳393(2), 395—Papers surrendered to state officers on arrest for procuring money by false pretenses held admissible in prosecution for using mails to defraud (Const. Amends. 4, 5; Penal Code, § 215 [Comp. St. § 10385]).**

Papers which defendants voluntarily surrendered to state officers when arrested for procuring money under false pretenses *held*, under Const. Amends 4 and 5, properly used in evidence against defendants in subsequent prosecution under Penal Code, § 215 (Comp. St. § 10385), for use of mails to defraud.

3. **Post office ⬳49(5)—Evidence of disposition of checks drawn on funds obtained held admissible in prosecution for use of mails to defraud (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution, under Penal Code, § 215 (Comp. St. § 10385), for use of mails to defraud by soliciting funds for prosecution of fictitious claim against government, evidence of issuance and disposition of checks drawn by particular defendant on funds obtained *held* admissible.

4. **Post office ⬳49(5)—In prosecution for use of mails to defraud by obtaining money for prosecution of claim against government, testimony tending to show that government records contained no evidence of claim held admissible (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution, under Penal Code, § 215 (Comp. St. § 10385), for use of mails to defraud by soliciting funds for prosecution of fictitious claim against government, testimony that records of Treasury Department and reports of committees of Congress contained no evidence of existence of such claim, and that government had issued a warning to the public of its nonexistence, *held* properly received.

5. **Criminal law ⬳741(1)—Case is properly withdrawn from jury only where no testimony warrants conviction, or where testimony is insufficient.**

Court is warranted in withdrawing case from jury only where there is no testimony to sustain conviction, or where testimony is insufficient, having regard to the principles of law applicable to and controlling criminal cases.

6. **Criminal law ⬳1159(2)—Courts should not set aside conviction, unless testimony was plainly insufficient.**

Court is bound by finding of jury on question of guilt, and should not attempt to usurp its functions, unless it plainly appears that testimony was insufficient to support their action.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; D. Lawrence Groner, Judge.

George Westcott Stearn and others were convicted of using mails in furtherance of a scheme to defraud, and they bring error. Affirmed.

· Before WADDILL, ROSE and PARKER, Circuit Judges. ·

W. M. Justis, Jr., of Richmond, Va., and T. F. Railsback, of Kansas City, Kan. (Samuel L. Adams, of South Boston, Va., and Charles B. De Shazo and Theodore B. Benson, both of Washington, D. C., on the brief), for plaintiffs in error.

Alvah H. Martin, of Norfolk, Va., and Callom B. Jones, of Richmond, Va., Asst. U. S. Attys. (Paul W. Kear, of Norfolk, Va., U. S. Atty., on the brief), for the United States.

WADDILL, Circuit Judge. The indictment in this case contains four counts, charging that the defendants unlawfully, in violation of section 215 of the Penal Code (Comp. St. § 10385), did use the mails of the United States in furtherance of a scheme to defraud; the specific offense charged being that the defendants, having devised or intending to devise a certain scheme or artifice to defraud or obtain money or property by means of false or fraudulent pretenses, representations, or promises for the purpose of executing such scheme or artifice so to do, placed or caused to be placed certain letters in the mail of the United States, enumerated and set forth in the several counts of the indictment, addressed to the persons therein named, for mailing through the post office establishment of the United States.

The scheme was predicated upon the theory that one Charles Durkee, a former Governor of the territory of Utah, had to his credit in the treasury of the United States a large sum of money alleged to be due to his estate, arising from transactions in connection with the promotion and building of the Union Pacific Railway system, which extended westward from the state of Iowa to California, and covered the period from about the commencement of the Civil War, and thereafter to the completion of the system, in the late '80's. The scheme was to raise money to aid the heirs of Durkee in the establishment of their claim against the government, which, starting with the sum of $64,000,000 more than 50 years ago, would amount to several hundred millions at the present time; the alluring promise held out being that there would be made a 50 to 1 return for any money paid in, and probably as much as 100 to 1.

The government's contention is that the scheme was in its entirety fraudulent, its purpose being to procure money from the overcredulous wherever found, and to use the same, not for the purpose of collecting data to justify the assertion of the wholly unfounded claim against the United States, in which they were supposed to have acquired an interest, but wholly for the benefit of the defendants; that the plan chosen was a mere method of enticing gullible persons to give up their money for a supposed valuable interest in a nonexisting property right; that in the prosecution of this design and scheme, and the securing of subscriptions of money from different persons named in the indictment and others, the defendants mailed the letters mentioned in the indictment, as well as others, all to the grand jurors unknown.

The defendants insist that this claim against the government for $64,000,000, with interest, is a just and valid one; that it is still due to the Durkee heirs, assigns, and legal representatives; that the government of the United States was improperly retaining the same; that the prosecution of their effort to collect the amount and obtain the necessary data ·to that end would result in great profits to those entitled thereto and having an interest therein; and that they would be enabled to realize on the expectations arising out of the claim; and that they had properly expended all sums raised by them on that account.

The indictment was duly returned on the 5th of October, 1925, and on the 8th of April, 1926, the defendants appeared and demurred generally, for reasons stated in writing, to the indictment and each count thereof, which demurrer the court overruled. Whereupon they pleaded not guilty, and a jury was impaneled and sworn. At the commencement of the trial, the defendants filed their petition asking that certain evidence, consisting of letters, papers, and other documents, alleged to have been taken from R. W. Warren, one of their number, at the time of his arrest, be returned to him, which motion the court denied, and thereupon the trial was proceeded with and testimony adduced; and on the 10th of April, at the conclusion of all the evidence, the court having declined to instruct a verdict for the defendants as requested, a verdict of guilty was found against each of them for the offenses charged against them. They thereupon moved to set aside the verdict and grant a new trial, which motion being overruled, the court entered judgment that Stearn be confined in the penitentiary at Atlanta, Ga., for the period of two years, Warren in the same prison for the period of one year, and Oliver in the jail at Richmond for the period of six months.

The defendants duly excepted to the action and rulings of the court in refusing to surrender the evidence taken from Warren, in the giving and exclusion of testimony, for its refusal to instruct a verdict in their behalf, and in entering judgment on the verdict as aforesaid. From this action the writ of error herein was sued out, 21 grounds of error being assigned why the judgment of the court should be reversed. These assignments will be considered, not in the order of their numbers, but according to the subject-matters covered thereby.

[1] 1. The first assignment relates to the action of the court in overruling the demurrer. Six specifications of objections are made to the indictment, viz.: That it did not state and present a violation of any of the penal laws of the United States, so as to apprise the defendants of the offense charged against them; that the same was indefinite, and failed to show a scheme or artifice to defraud by using the mails; was bad for surplusage, in that it used prejudicial terms in describing the subscribers to the fund as "victims"; and generally that it consisted of mere vague and insufficient generalities, not conveying to the accused the nature and character of the crime alleged against them.

The demurrer was clearly not well taken, as the indictment and each count thereof fully and accurately described the offense charged, and the use of the word "victim," in the sense used, was not prejudicial to the defendants. Moreover a bill of particulars could have been asked for, if the defendants found themselves embarrassed from the causes set forth in their demurrer.

[2] 2. Complaint is made of the action of the court in failing to return, and in using against them, the papers found upon the defendant Warren at the time of his arrest, set forth in their assignments Nos. 2, 6, 12, and 17. The effect of unlawful seizure of a defendant's papers and documents in contravention of the Fourth and Fifth Amendments to the Constitution has recently been the subject of frequent review by this and other appellate courts. These constitutional guaranties are of vital importance to an accused, and should not be lightly disregarded. But under the facts of this case we can but feel that no error was committed by the trial court in its rulings. Careful hearing and consideration was given to the petition, and the evidence of those participating in the acts in question was fully heard, with the result that it was found that the papers were voluntarily surrendered to state officers, who had caused the arrest of the defendants for procuring money under false pretenses. The testimony seems clear and conclusive on this subject, and the court correctly so found. Upon the case being discontinued by the state authorities, the papers in question were legally subject to use in the prosecution for a violation of the postal laws of the United States.

3. Assignments Nos. 4, 5, 6, 7, and 8 refer generally to the introduction in testimony of letters and correspondence between James R. Harrison, R. W. Warren, George Westcott Stearn, and S. T. Kent Oliver, and to conversations and statements had between the several parties in connection with the formation, prosecution, and furtherance of the scheme to defraud set forth in the indictment. The several exceptions covered by these specifications are without merit, and the court correctly ruled and passed upon the same, and its action is free from prejudicial error, such as would warrant the court in setting aside the verdict, in the light of the otherwise plain and palpable violation of law involved.

[3] 4. Assignments 9, 10, 11, and 16 relate especially to the issuance and disposition of certain checks drawn by the defendant R. W. Warren on the funds, or portions of the funds, collected for use in the prosecution of the alleged fraudulent claim, and the disposition of the same. In the light of the government's contention in this case, which there is much in the testimony to warrant, particularly with the finding of guilty by the jury, that the funds raised by the alleged fraudulent scheme were never intended to be used in the prosecution of the claim of the Durkee heirs against the government, but for their own private use and purposes, the evidence was clearly admissible.

[4] 5. Assignments 18 and 19 relate to alleged error of the court in permitting witnesses to testify as to the records of the Treasury Department, and to reports of committees of Congress bearing on the subject of the alleged Durkee claim. Without entering into detail, it seems to us the District Court was clearly right in its rulings in the respects mentioned. Of course, the court would not have admitted the introduction of mere reports of committees of Congress; but there can be no doubt that it was entirely permissible for the government to show that its records did not contain any evidence of the existence of such a claim, and that, in addition, the government had issued a warning to the public of the nonexistence of the supposed indebtedness, and against their being deceived thereby.

6. Exceptions to the argument of the district attorney, assignment No. 20, is wholly without merit. What was said was in itself free from objection, and was a comment on the testimony of one of the defendants.

7. This brings us to the consideration of the case upon its merits; that is to say, to the action of the court (assignment 3) in refusing to instruct a verdict for the defendants, and its refusal (assignment 21) to set aside the jury's verdict, and the entry of judgment thereon against the plaintiffs in error. These assignments involve the facts of the case; that is, whether the court would have been warranted in withdrawing the case from the jury, and directing a verdict for the defendants at the conclusion of the testimony, and the subsequent entry of judgment thereon.

[5] The law applicable to each of these motions is so well settled and recognized as not to require extensive discussion or the citation of authorities. The court would have been warranted in withdrawing the case from the consideration of the jury, at the instance of the defendants, only where there was no testimony to sustain their conviction, or the same was insufficient, having regard to the principles of law applicable to and controlling criminal cases, to warrant such action.

A careful review of the entire testimony will make clear that the trial court could not have withdrawn the case from the consideration of the jury upon defendants' motion, and directed a verdict in their favor, without violating the plainest principles established for the proper conduct and discharge of its duties. The case on the merits depended entirely upon the view the jury took of the testimony, and, accepting the government's evidence as furnishing the correct version of the transaction mentioned; there was ample testimony to warrant the conviction. The motion, therefore, to direct a verdict for the defendants, was properly denied, as the case was not one in which such a motion should have prevailed.

[6] The action of the court in refusing to set aside the verdict of the jury, and in entering judgment thereon, largely involves the same question as the one just considered, viz. the sufficiency of the testimony to warrant a conviction. The finding of the jury that the defendants were guilty in great measure relieves any embarrassment on the part of the court on this question, the jury being specifically charged with the duty of finding the facts, and the court is bound thereby, and should not attempt to usurp the function of the jury, unless it plainly appears that the testimony was insufficient to support their action.

In this case the court clearly would not have been warranted in disturbing this finding. On the contrary, the entire testimony unerringly points to the correctness of the conclusion reached. There was direct and positive conflict in many of the crucial points involved. The jury's finding was simply to the effect that the government's theory of the case was correct, and that the testimony adduced by it, showing and tending to show the guilt of the accused, should be accepted, instead of that of the defendants to the contrary. It is difficult to impartially review this testimony and the action of the defendants in connection therewith without being impressed with the fact that the so-called Durkee claim, as containing any real existence or valid charge against the government, was wholly fictitious (Kuykendall v. Union Pac. R. Co. [C. C. A. 8th Cir.] 163 F. 819, 822), and the defendants and those acting with them had no legal or valid right to participate therein, if the same existed. At least, in preferring a claim against one's government, pure patriotism, if acting from no higher consideration, would have indicated to those attempting to procure money with which to prosecute the same that it was honest and bona fide, and that they had valid existing rights therein; and surely those selling interests in such claim, or procuring money to assist in the prosecution, should have known, before attempting to do so, that they were acting in behalf of those having a valid one, and a clear right to prosecute the same, and to dispose of interests therein, and were authorized to act for them in the matter.

Considering the case from every viewpoint, there is but one conclusion that can be reached; that is, that the District Court's action was clearly right, and should be affirmed.

Affirmed.

The affirmance of the decision in this case was concurred in by the three Circuit Judges, but Judge ROSE died before the announcement of the opinion.