**CHRISTOFFEL v. UNITED STATES.**

No. 10568.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 8, 1951.

Decided Sept. 18, 1952.

Rehearing Denied Nov. 28, 1952.

See also, 89 U.S.App.D.C. 341, 196 F.2d 560.

736

Mr. O. John Rogge, Washington, D. C., attorney for appellant at the time of argument, for appellant. Mr. David Rein, Washington, D. C., also entered an appearance for appellant. Mr. Joseph Forer, Washington, D. C., entered an appearance for appellant subsequent to the argument.

Mr. John S. Pratt, Special Asst. to the Atty. Gen., *pro hac vice,* by special leave of Court, with whom Messrs. George Morris Fay, U. S. Atty. at the time of argument, and James W. Knapp, Attorney, Department of Justice, were on the brief, for appellee. Mr. Joseph M. Howard, Asst. U. S. Atty., also entered an appearance for appellee. Messrs. Charles M. Irelan, U. S. Atty., and Joseph A. Lowther, Attorney, Department of Justice, entered appearances for appellee subsequent to the argument.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

This appeal is from a judgment entered upon a jury verdict that appellant had committed perjury in testifying before the Committee on Education and Labor of the House of Representatives on March 1, 1947. The indictment charged he had denied that he was or had been a member of the Communist Party. An earlier convic-

tion under the same indictment had been affirmed by this court, 1948, 84 U.S.App. D.C. 132, 171 F.2d 1004. The Supreme Court reversed, 1949, 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826. The ground of reversal was that an essential element of perjury is the presence of a competent tribunal [1] when the allegedly perjurious testimony is given and it was error for the trial court to instruct the jury that this requirement was met if a quorum consisting of a majority of the Committee was present at the commencement of the Committee session. This was some two hours prior to the time appellant began his testimony and nearly three hours prior to the particular responses upon which the indictment is based. The Committee was composed of twenty-five members. The trial court had instructed the jury that if the session began with thirteen members present the Committee was a competent tribunal even if thereafter some members temporarily left the session and no question was raised as to lack of a quorum.

On retrial the Government undertook to prove the actual and physical presence of a majority of the Committee when the appellant was sworn and when he gave the allegedly perjurious testimony.

No question is raised on this appeal as to the sufficiency of the evidence to support the verdict which implicitly embodies a finding by the jury that the testimony was false and that a quorum, and, therefore, a competent tribunal, was present when appellant was sworn and falsely testified. The principal contention is that but for errors of the court in the exclusion and admission of evidence on the factual issue of a quorum the jury might have reached a different result.

I. Preliminarily, however, we consider the contention that the indictment should have been founded upon 18 U.S.C. § 231 (1946), now 18 U.S.C. § 1621 (Supp. 1951),[2] instead of upon the District of Co-

1. See definition of perjury, § 22–2501, D.O. Code 1940, n. 3, infra.

2. "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certifi-

lumbia statute, § 22–2501, D.C. Code 1940.[3] On the prior appeal this court disposed of the question unfavorably to appellant's position, upon the authority of cases then cited. This ruling was left undisturbed by the Supreme Court when it reversed. We do not reopen a question so definitively decided in the earlier stages of the case.

II. The errors asserted with respect to the exclusion of evidence bearing on the presence of a quorum are three.

*First.* Appellant gave his testimony before the Committee the afternoon of March 1, 1947. The proceedings were printed in a volume which became known as Government Exhibit 5. It included, *inter alia,* the proceedings immediately prior to the testimony of appellant. He contends the court erred in rejecting his offer of a portion of this volume after the Government had put another portion of it in evidence. He states the purpose of his offer was to show who was present immediately prior to the beginning of his testimony, when the previous witness, Mr. Thomas, was testifying. The theory of the contention is that in determining which members of the Committee were present when appellant was sworn and testified it is relevant to show who were present just prior thereto. We assume the soundness of this theory but examination of the record convinces us that the actual offer, though somewhat ambiguous, was of the remaining portions of appellant's own testimony and not that part of Exhibit 5 which incorporated the prior proceedings or the testimony of the previous witness. We cannot support a claim of error directed to the rejection of an offer which was not made. It is not argued, and if it were the argu-

ment would not avail, that there was any prejudice to appellant in not admitting in evidence those parts of his own testimony before the Committee which were in fact offered.

*Second.* On the issue of presence of the requisite number at the essential times appellant sought by subpoenas duces tecum to obtain the minutes book of the Committee covering the day he is charged with having perjured himself, March 1, 1947. The purpose was to examine and possibly offer in evidence minutes, if any, of an executive session of the Committee held just after the allegedly perjurious testimony, in the effort to show how many members of the Committee were then present.

A subpoena duces tecum was issued against Congressman Lesinski, Chairman of the Committee when the subpoena was issued. The Congressman appeared without the minutes book. He explained to the court that it was in the custody not of himself but of the Clerk of the House of Representatives, Mr. Ralph R. Roberts. When Mr. Lesinski was again on the stand at a subsequent stage of the trial he said that if counsel for appellant would send someone with him he would bring the whole book into his office and counsel could inspect it. We find no error in regard to the fate of this subpoena and do not understand appellant to press to the contrary insofar as it, considered alone, is concerned.

A subpoena duces tecum was thereafter served upon the Clerk of the House, Mr. Roberts, who also appeared without the book. He explained that the problem was for the House and said he had brought it to the attention of the Speaker, following which the House had passed a resolution

cate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both."

3. "Every person who, having taken an oath or affirmation before a competent tribunal, officer, or person, in any case in which the law authorized such oath or affirmation to be administered, that he

will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, wilfully and contrary to such oath or affirmation states or subscribes any material matter which he does not believe to be true, shall be guilty of perjury; and any person convicted of perjury or subornation of perjury shall be punished by imprisonment in the penitentiary for not less than two nor more than ten years. * * *"

dated February 8, 1950,[4] referring the matter to the Judiciary Committee, which had not reported when Mr. Roberts appeared. The court stressed the urgency of the matter and asked Mr. Roberts to advise the chairman of the Committee that in the opinion of the court the case could not proceed to a final determination until the records were produced. Thereafter, however, Mr. Roberts came to the stand again and presented a resolution of the House dated February 13, 1950.[5] After background recitals, including those depicting issuance of the subpoena and a request made by the Attorney General of the United States that the House permit the reproduction of copies of certain records of the Committee, the resolution continued:

> "Whereas nothing occurred of sufficient importance in the executive session of said Committee on Education and Labor on the afternoon of March 1, 1947, to justify the entry of a minute of said meeting and no minutes of said executive meeting were made;
> * * *."

The resolution then set forth the view of the House that by its privilege no evidence of a documentary character under its control or in its possession can by the mandate or process of the ordinary courts of justice be taken from such control or possession but by its permission; and that no officer or employee of the House has a right, without its consent first obtained either voluntarily or in obedience to a subpoena duces tecum to produce any document belonging to the files of the House before any court or officer thereof, nor to furnish any copy of any testimony given or paper filed on any investigation before the House or any of its committees, except as authorized by statute to be copied and such as the House itself may have made public. The resolution then authorized the Clerk to appear at the place and before the court named in the subpoena but not take with him any original book, paper or document on file in his possession as Clerk, but as requested by the Attorney General to produce certified copies of the minutes of the Committee's public meetings only.

Photographic copies of the minutes of all public meetings recorded in the book were presented by Mr. Roberts and accepted as responsive to the subpoena insofar as those parts of the book were concerned. Mr. Roberts also testified that he had made a very hurried examination of the minutes of the executive sessions as they appear in the book and did not find the minutes of the executive session on March 1, 1947. He later said on cross-examination he did not know whether there were any minutes of the executive session of March 1, 1947.

One further fact should be noted. A member of the Committee, Mr. Clare E. Hoffman, testified categorically that no minutes of record were kept of the executive session in question or if kept were not put in the minutes book.

After receiving the resolution that no minutes were made of the executive meeting of March 1, 1947, the court did not insist upon production of the minutes book. The question is whether this requires a new trial. No contention is made that the minutes of any other executive meeting, or the holding of any such meeting, are pertinent. No effort was made to contradict by evidence the recital of the House resolution or the testimony of Mr. Hoffman that no minutes were kept of the executive meeting of March 1, 1947.

The right of an accused by appropriate means to obtain evidence material to his defense is essential to the administration of the criminal law. A subpoena duces tecum to one who has custody of the evidence is an appropriate means. If such evidence is under the control of a department of government charged with the administration of those laws for whose violation the accused has been indicted, and its production is refused, or it is excluded, the courts, having responsibility under the Constitution for the trial of criminal cases, have held a conviction will not be permitted without the evidence. United States v. Grayson, 2d

4. H.Res. 465, 81st Cong., 2d Sess. (1950).

5. H.Res. 469, 81st Cong., 2d Sess. (1950).

Cir., 1948, 166 F.2d 863, 870; United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503, 506, opinions by Judge Learned Hand. See, also, Edwards v. United States, 1941, 312 U.S. 473, 482, 61 S.Ct. 669, 85 L.Ed. 957. Like principles should apply with regard to evidence in the custody of the House of Representatives. While the privilege of the House must be respected it might give rise to occasions when it would be necessary to forego conviction of crime because evidence is withheld. There is no doubt some discretion, to be carefully exercised so as not to invade the constitutional right of an accused to compulsory process. U.S.Const. Amend. VI; United States v. Burr, C.C.D.Va.1807, 25 Fed.Cas. pages 30, 35 et seq., No. 14,692d; United States v. Schneiderman, D.C.S.D.Cal. 1952, 106 F.Supp. 731. In the Burr case, in passing upon an application for a subpoena duces tecum to compel the President to produce a letter, Chief Justice Marshall used forceful language in describing the right to compulsory process. He was discussing the issuance of a subpoena,[6] as to which there was no hesitancy in the case at bar. While what he said must largely be applied to enforcement as well as to issuance, the Chief Justice indicated there was no absolute right, saying in part, "If it be apparent that the papers are irrelative to the case, or that for state reasons they cannot be introduced into the defence, the subpoena duces tecum would be useless." Furthermore, the cases to which we have referred assume the existence of the evidence sought, while the present question is whether a subpoena must be enforced after it appears the minutes desired are not in the book sought by the subpoena. On that question appellant's argument that the minutes themselves are the best evidence as to who was present at the executive meeting is beside the point.

We turn to the question whether the absence of minutes was adequately established. It is provided by Rule 44, Fed. Rules Civ.Proc., 28 U.S.C.

"(b) Proof of Lack of Record. A written statement signed by an officer having the custody of an official record or by his deputy that after diligent search no record or entry of a specified tenor is found to exist in the records of his office, accompanied by a certificate.[as to custody] as above provided, is admissible as evidence that the records of his office contain no such record or entry.

"(c) Other Proof. This rule does not prevent the proof of official records or of entry or lack of entry therein by any method authorized by any applicable statute or by the rules of evidence at common law."

Rule 44 is made applicable to criminal cases by Rule 27, Fed.Rules Crim.Proc. 18 U.S.C. While Rule 44(b) does not in terms cover the precise situation, a resolution of the House of Representatives, emanating from its Judiciary Committee, that no minutes were kept, should be given no less effect than the written statement of an officer having custody of an official record. Furthermore, under the rules of evidence at common law, see Rule 44(c), supra, it was not essential to produce the book itself to prove that it did not contain the entries. 4 Wigmore, Evidence § 1244(5) (3d ed. 1940); Shore v. United States, 61 App.D.C. 18, 20, 56 F.2d 490, 491, certiorari denied, 1932, 285 U.S. 552, 52 S.Ct. 408, 76 L.Ed. 942; Stearn v. United States, 4 Cir., 1927, 18 F.2d 465, 467, certiorari denied, 275 U.S. 539, 48 S. Ct. 36, 72 L.Ed. 414; Randall v. United States, 5 Cir., 1945, 148 F.2d 234, certiorari denied, 325 U.S. 885, 65 S.Ct. 1579, 89

6. Instead of complying with Chief Justice Marshall's order to produce, President Jefferson sent the demanded letter to Mr. Hay, the District Attorney prosecuting the case. A subpoena was served on him. He returned a copy of such parts of the letter as he thought material. Burr insisted on the production of the entire letter. A second subpoena apparently was served on President Jefferson and he refused to notice it. "And there this heated and dangerous controversy appears to have ended." III Beveridge, The Life of John Marshall 522 (Houghton Mifflin Co. 1919).

L.Ed. 2000; Gurinsky v. United States, 5 Cir., 1919, 259 F. 378, 380; Petersen v. United States, 9 Cir., 1923, 287 F. 17; see, also, Burton v. Driggs, 1873, 20 Wall. 125, 135–136, 87 U.S. 125, 135–136, 22 L.Ed. 299; Meyers v. United States, 1948, 84 U.S.App.D.C. 101, 171 F.2d 800, 11 A.L.R. 2d 1, certiorari denied, 1949, 336 U.S. 912, 69 S.Ct. 602, 93 L.Ed. 1076 (1950). Compare Blackburn v. Crawfords, 1865, 3 Wall. 175, 191, 70 U.S. 175, 191; Shreve v. United States, 9 Cir., 1935, 77 F.2d 2, 5, certiorari denied, 1936, 296 U.S. 654, 56 S.Ct. 380, 80 L.Ed. 466.

Since appellant made no effort to impeach the resolution or the testimony of Mr. Hoffman as to the absence of minutes of record of the executive meeting, the case is not one of failure to insist upon the production of evidence. The question rather is whether the court was obliged to require production of a book which was shown not to contain the evidence sought. The question of privilege aside, to compel production in these circumstances would be to eliminate all discretion and to let formalism predominate. This is not required. Every subpoena duces tecum, in whatever terms and under any and all circumstances, need not be left unmodified. Rule 17(c), Fed.Rules Crim.Proc., provides that a subpoena may command a person to produce the books, papers, documents or other objects designated, but the Rule also authorizes the court on motion made promptly to quash or modify the subpoena if compliance would be unreasonable or oppressive. By analogy, the trial court was not required to exact enforcement of this subpoena. More precisely, it was not reversible error to fail to do so when it appeared the desired minutes were not in the book, particularly since appellant made no effort by other evidence to throw light on the question either of their existence or of the number present at the meeting.[7] See Viereck v. United States, 1942, 76 U.S.App. D.C. 262, 278, 130 F.2d 945, 961, reversed on other grounds, 1943, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734; Shotkin v. Nelson, 10 Cir., 1944, 146 F.2d 402; see, also, May v. United States, 1949, 84 U.S.App.D.C. 233, 249, 175 F.2d 994, 1010, certiorari denied, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505, rehearing denied, 338 U.S. 854, 70 S.Ct. 81, rehearing denied, May v. U. S., 338 U.S. 882, 70 S.Ct. 154, 94 L.Ed. 542; Overholser v. De Marcos, 1945, 80 U.S.App.D.C. 91, 94, 149 F.2d 23, 26, certiorari denied, 325 U.S. 889, 65 S.Ct. 1579, 89 L.Ed. 2002, rehearing denied, 326 U.S. 805, 66 S.Ct. 16, 90 L.Ed. 490; Church v. Hubbart, 1804, 2 Cranch 187, 237, 6 U.S. 187, 237; Buell v. Connecticut Mut. Life Ins. Co., C.C.N.D.Ohio 1875, 4 Fed.Cas. page 590, No. 2,103.

*Third.* Counsel for appellant claims he was unduly restricted in his cross-examination of members of the Committee as to their presence at the critical times. He vigorously probed their testimony in this regard. One method counsel pursued was to inquire into their whereabouts before they placed themselves as present. Another was to exploit the significance of the Chairman's custom of calling upon the members present in rotation, in order of party and seniority.

It is quite true, we think, that it was incorrect, as appellant contends, for the court to rule, as at times the court did, that cross-examination into a member's presence at a time shortly previous was collateral to the issue of his presence when appellant took the oath and testified falsely. Presence at these latter times must ultimately be proved, but in seeking the truth about this, probing by cross-examination of a witness' whereabouts at a closely related time was pertinent and therefore not collateral.

Appellant points to excluded questions which should have been permitted, but this is not enough unless there was an abuse of discretion in the limitations imposed. In determining this it is well settled that substantial latitude resides in the trial court. See Alford v. United States, 1931, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624, and Lindsey v. United States, 1942, 77 U.S.App.D.C. 1, 133 F.2d 368. We have

---

7. We have called attention to the testimony of Congressman Lesinski as to the opportunity accorded defense counsel at one time to inspect the book.

reviewed the direct and cross-examination.[8] Notwithstanding certain exclusions the record discloses a lengthy cross-examination which included questions and answers similar to those at times prohibited. Thus was made available to appellant the substance of the testimony desired. To illustrate, the court at one point refused to permit counsel to draw out from one of the thirteen Congressmen constituting the alleged quorum that he had left the room. Counsel's theory was that if the witness had left he must have gotten back in order to be there when he said he was, and he wished to test this by taking the witness over the ground in some detail. We think the inquiry should have been permitted, but its exclusion is robbed of prejudice by the witness' testimony at another point that it was his custom to get up and go outside from time to time and that he did possibly leave the room. He was cross-examined closely along these lines. Again, the Chairman of the Committee was questioned about his custom, already adverted to, of calling upon members in rotation, thus in effect having a roll call. Counsel referred to testimony at the first trial bearing upon the number present as disclosed by this polling of members. The limitation placed by the court in this regard was cured of prejudice by the cross-examination of the Chairman which in fact covered the same ground at a different stage of his testimony. Another example may be given. At one point the court stopped cross-examination of the Chairman about his previous testimony as to those present when the witness Thomas, who preceded appellant, was questioned; but the record shows the Chairman had already been cross-examined quite closely on this exact subject.

Some pertinent questions were left altogether unanswered, but the cross-examination as a whole was so full that we find no such abuse by the limitations imposed as warrants reversal. Counsel was accorded and availed himself of the opportunity substantially to exercise his right to cross-examine. Therefore a discretion as to its scope became lodged in the trial court. Glasser v. United States, 1942, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680; Collazo v. United States, 1952, 90 U.S.App.D.C. 241, 196 F.2d 573, certiorari denied, 343 U.S. 968; 72 S.Ct. 1065; Wright v. United States, 1950, 87 U.S.App.D.C. 67, 183 F.2d 821; Lindsey v. United States, supra. A reasonable latitude was allowed, including a probing of the precise issue of presence and whereabouts of Committee members when a quorum was essential. This issue was sufficiently and fairly tested before the jury through both direct and cross-examintion.

III. Error is assigned to the admission in evidence on the second trial of a transcript of the testimony given at the first trial by Congressman Thomas L. Owens, who had since died. At the first trial he testified that he was present when the Committee convened for the afternoon session of March 1, 1947. The admission of the duly authenticated transcript of this testimony was permissible as an exception to the hearsay rule. Mattox v. United States,

---

8. We have assumed that a quorum was essential to the existence of a competent tribunal both at the swearing of appellant and when he gave the allegedly false testimony. This assumption is in accord with the position of both appellant and Government in this court, though it might be argued a quorum need not be present when the witness was sworn because the Chairman of the Committee was unquestionably competent to administer the oath, see n. 3, supra, and because of the distinction made in United States v. Bryan, 1950, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884, of the holding in Christoffel v. United States, 1949, 338 U.S. 84, 69 S.Ct. 1447, 90 L.Ed. 1826. The latter dealt explicitly only with the necessity of a quorum when the false testimony was given. If a quorum was required only then, the major part of the limitation imposed upon cross-examination would no doubt be upheld upon the independent ground that the excluded questions dealt with a time at least an hour before the false testimony was given, that is, when appellant took the oath, and that it was not an abuse of discretion to exclude evidence as to that period as too remote to be of value in determining who was still present an hour later.

**742**

1895, 156 U.S. 237 at page 240 et seq., 15 S.Ct. 337, 338, 39 L.Ed. 409. In the case cited the claim was made that in a criminal trial the introduction of such previous testimony violated the constitutional right of the accused, protected by the Sixth Amendment, to "be confronted with the witnesses against him." The Court held,

"The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. * * *" 156 U.S. at page 244, 15 S.Ct. at page 340.

The rule thus approved assumes that the issue on the first trial is the same as on the later, otherwise the right of cross-examination has not been fully available. In the case at bar the second trial was upon the same indictment as the first. In a very literal sense, therefore, the ultimate issue was the same. Appellant points out, however, that the view of the judge who presided at the first trial was that the subsidiary issues were not the same as those fought out in the second trial after the decision of the Supreme Court; that is to say, the first trial proceeded on the theory that the presence of a competent tribunal depended upon the presence of a majority of the Committee prior to the false testimony, it being presumed in the absence of challenge that a quorum once present remained, whereas on the second trial under the rule laid down by the Supreme Court, it was essential to prove the physical presence of a majority of the Committee at the time the false testimony was given. Opportunity to cross-examine, however, was open at the first trial and appellant did not seek to pursue it according to his own theory of the quorum issue. The narrow scope of Mr. Owens' previous testimony did not render it inadmissible or prejudicial on the second trial, however much it limited its importance.

On review of all questions raised, the most important of which we have discussed, we find no reversible error and the judgment is therefore affirmed.

On Petition for Rehearing.

On petition for rehearing appellant stresses (1) failure of the trial court to enforce the subpoena duces tecum, (2) admission of the transcript of the prior testimony of Congressman Owens, deceased, and (3) exclusion of evidence on the quorum issue. At our request the Government filed an additional memorandum on the latter point.

 (1). We have nothing significant to add as to the subpoena duces tecum. Appellant argues in his petition for rehearing that the trial court did not base its failure to enforce the subpoena on the reasons we give in justification for such failure. But this seems to us immaterial if those reasons do resolve the question of reversible error.

 (2). We have again considered the admission in evidence of the transcript of testimony given at the first trial by Congressman Owens, a member of the Committee. This transcript shows that on direct examination Mr. Owens testified he was present "at the beginning of the afternoon session" of March 1, 1947. This was quite some time prior to the swearing of appellant. On the trial now under review other witnesses testified as to their recollection of Mr. Owens' presence as it bore on the existence of a quorum when required. They were subject to cross-examination. It is true as appellant contends that while the ultimate issue in the two trials was the same, they differed in theory as to when a quorum was essential. If the effect of this on possible cross-examination at the first trial did not permit the admission of the transcript at the second trial, under the rule of Mattox v. United States, 1895, 156 U.S. 237, 15 S.Ct. 337, 29 L.Ed. 409, referred to in our former opinion, we nevertheless adhere to the view, also there stated, that its admission was not prejudicial. As we point out above, those who placed Mr. Owens as present on the second trial were subject to full cross-examination, and the receipt of his own direct testimony as to his presence when the session began, as to which he was fully cross-examined,

leaves no such conviction of unfairness as constitutes prejudice.

 (3) A. The petition for rehearing re-argues the exclusion of certain testimony tendered by appellant through Mrs. Israell. We had not overlooked this problem but did not deem it one of the important questions calling for discussion in our original opinion. We have, however, again reviewed the matter. Mrs. Israell testified she was present during the times involved in the quorum issue and that only about six members of the Committee itself were present. She said that Mr. Thomas, who preceded appellant as a witness before the Committee, left the room at the conclusion of his testimony. She was then asked by the defense whether anyone left with him. The court sustained the Government's objection to this question. The question at best was preliminary. If counsel desired to preserve his point for appeal he should at least have asked the further question whether any member of the Committee left with Mr. Thomas.

B. We pointed out in our former opinion that in cross-examining Committee members on the quorum issue it was proper for the defense to inquire into their whereabouts at a closely related time. But we also pointed out that, notwithstanding errors of the court in restricting the defense in this regard, reasonable latitude was allowed and the quorum issue was sufficiently and fairly tested. Appellant now presses that at the time of exclusions the rulings of the court were such as to indicate to the jury that the court considered the evidence immaterial, and that therefore its admission at other times did not cure the harm, citing Lindsey v. United States, 1942, 77 U.S.App.D.C. 1, 133 F.2d 368. We think, however, that considering the record as a whole not only was the substance of what the defense sought to elicit presented to the jury, though not always when or as often as appellant sought or indeed in as great detail as we would prefer, but also that the jurors were not deterred from giving it the weight to which they deemed it entitled.

Our conclusion is that a new trial is not warranted. This resolution of our doubts does not entirely remove them from the minds of two of us, who believe that the reviewing authority of the Supreme Court might well be invoked for further consideration of the case.

The petition for rehearing is denied.