Leslie F. NARUM

v.

UNITED STATES.

No. 350–54.

United States Court of Claims.

Nov. 2, 1960.

Robert H. Reiter, Washington, D. C., for plaintiff. Spaulding, Reiter & Rose, Washington, D. C., on the briefs.

John R. Franklin, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Francis X. Daly, Washington, D. C., on the brief.

MADDEN, Judge.

The plaintiff was, on September 23, 1948, dismissed from the United States Marine Corps pursuant to his conviction and sentence, on March 12, 1948, by a general court-martial. He was, before his dismissal, a colonel, and had had almost 25 years of active service.

The plaintiff was stationed in China during the last period of his service. On January 15, 1948, he was brought to trial before a properly convened and constituted general court-martial. Sessions of the trial were held in three different cities in China. The trial ended on March 12, 1948, with the conviction of the plaintiff.

The charges on which the plaintiff was tried are quoted in our findings. The charges had to do with false statements made by the plaintiff as to the ownership of goods which he shipped through the facilities of the Marine Corps, and as to the payment for such goods; illegal use of the Marine Corps mail facilities; illegal importation of drugs; and, violation of naval regulations.

The court-martial found the plaintiff guilty on most of the charges, and sentenced him to dismissal from the United States Marine Corps and from the United States naval service. The court-martial proceedings, conviction and sentence were approved by the convening authority, and by the Acting Secretary of the Navy except that the latter official set aside the convictions on certain of the charges, but approved the convictions on the other charges, and the sentence, and ordered the plaintiff to be dismissed from the service. As we have seen, he was dismissed on September 23, 1948.

The plaintiff requested the United States Court of Military Appeals to review his conviction and sentence. That court dismissed the plaintiff's petition for review for lack of jurisdiction, apparent-

ly because the proceedings in the plaintiff's case had occurred before the establishment of the Court of Military Appeals.

The plaintiff contends that, although the court-martial which tried and sentenced him had jurisdiction at the beginning of the proceeding, it lost jurisdiction by its failure and refusal to accord to the plaintiff, during the course of the trial, various constitutional rights. He says that the court's refusal of his request that the trial be a closed trial instead of a public trial had the effect of preventing him from obtaining the testimony of witnesses, which testimony would have been favorable to him. The court-martial deliberated over the plaintiff's request and concluded that the plaintiff had not shown that a public trial would be prejudicial to his defense. When the witness Boellhoff who, the plaintiff says, would have given testimony favorable to him in a closed trial, was later called as a witness, he refused to testify, and, he being a foreigner and the court being held in a foreign country, he could not be compelled to testify. In his full unsworn statement refusing to testify, he did not say that he would testify if the trial were closed, and the plaintiff's counsel did not ask him if he would. He did not say that his testimony would be favorable to the plaintiff, except as that might be inferred from the following part of his unsworn statement:

> "I am sorry that I cannot be able to clarify questions which might also clear the defendant in some charges which he probably has against him. They are not exactly known to me * * *."

■ The action of the court-martial in denying the plaintiff's request for a closed trial lay well within the discretion which must be accorded to a trial court, either civil or military.

The plaintiff contends that the admission in evidence, in the court-martial, of the testimony of Boellhoff and of another person, Krinkevitch, given before a Navy Court of Inquiry, was a violation of the plaintiff's constitutional right to be confronted by witnesses who gave testimony unfavorable to him.

Before the plaintiff was charged with the offenses for which he was tried and sentenced, a Court of Inquiry had heard evidence relating to transactions in which the plaintiff was involved. The plaintiff had been named as a defendant in the Court of Inquiry proceedings, had been present in person and by counsel, had cross-examined Boellhoff, and had declined the tendered opportunity to cross-examine Krinkevich.

The statutory provisions relating to Navy Courts of Inquiry, applicable at the time of the proceedings here involved, are in 34 U.S.C. (1946 ed.) § 1200, Articles 55 to 60. Article 60 provides:

> "Proceedings;    authentication; use in evidence.
>
> "The proceedings of courts of inquiry shall be authenticated by the signature of the president of the court and of the judge advocate, and shall, in all cases not capital, nor extending to the dismissal of a commissioned or warrant officer, be evidence before a court-martial, provided oral testimony can not be obtained."

The comparable provision under the Uniform Code of Military Justice, enacted May 5, 1950, 64 Stat. 108, is in 50 U.S.C. (1952 ed.) § 625.[1] The provisions concerning the setting up of and the procedure in Courts of Inquiry under the Uniform Code are in 50 U.S.C. (1952 ed.) § 731.[2]

■■ Since the plaintiff was a commissioned officer and his sentence was dismissal from the service, the court-martial committed an error of law in the reception of the Court of Inquiry evidence. As this court explained, with citation of authority, in Graham v. United States, 136 Ct.Cl. 324, neither this court

---

1. Now 10 U.S.C.A. § 850.

2. Now 10 U.S.C.A. § 935.

nor any other court sits as a court of appeals to correct errors of law which may be made by courts-martial and the military hierarchy which reviews the decisions of such courts. We will not go over that well-ploughed ground again.

The plaintiff contends that the error committed by the court-martial was not a mere error of law. It was, he contends, a violation of a constitutional right. The plaintiff is mistaken. As this court decided in the Graham case, supra, we could not possibly hold that the Constitution forbids the use of Court of Inquiry evidence in court-martial proceedings unless we are ready to hold that the statute quoted above, which has been in the statute books for almost 100 years, is unconstitutional. There could be no *constitutional* difference between the admissibility of evidence in a trial in which an officer is sentenced to dismissal, and nothing more, and a trial in which he is sentenced to a heavy fine, or to a period of imprisonment at hard labor, or both. In the latter case Congress has expressly authorized the admission of the Court of Inquiry evidence.

The Constitution does not forbid the use of evidence which has been taken in earlier proceedings, if the witness has become unavailable at the time of the subsequent trial. The reception of such evidence is, in a sense, a departure from the hearsay rule. As such, it is in the company of many other time-honored exceptions to the hearsay rule. Most of the other exceptions have been made by courts, in judicial decisions. They have been based upon the philosophy that it is a serious thing to permit justice to miscarry, or to be frustrated, when there is trustworthy evidence available, and the exceptions are instances in which, for one reason or another, the courts have thought that evidence of the type presented was trustworthy.

If the courts have been able, without violating the Constitution, to create numerous exceptions to the hearsay rule, is there any imaginable reason why Congress cannot, in one instance, do likewise?

The extensive discussion by Dean Wigmore in his treatise on evidence, beginning in volume V, section 1395, shows that there is no constitutional inhibition of the reception of evidence of the kind here involved. His discussion shows, of course, that if this kind of evidence is rejected, the result may be a complete failure of justice. He says, at page 147 of volume V:

"(b) There is on principle no distinction, as to the conditions of necessity for using depositions and former testimony, between *civil* and *criminal cases*. If absence from the jurisdiction (for example) is a necessity in the one class of cases, it is equally a necessity in the other. The needs of public justice are as strenuous as those of private litigation. It is even more necessary that an offender against the community be duly punished than that a debtor discharge his private obligation."

In the case of West v. State of Louisiana, 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965, the Supreme Court affirmed a conviction of larceny in a case in which a deposition, taken before a committing magistrate in the presence of the accused, of a witness who had been cross-examined by counsel for the accused, the witness being permanently absent from the state at the time of the trial, was read in evidence at the trial. Mr. Justice Peckham, for the Court, said:

"At common law, the right existed to read a deposition upon the trial of the defendant, if such deposition had been taken when the defendant was present and when the defendant's counsel had had an opportunity to cross-examine, upon proof being made to the satisfaction of the court that the witness was, at the time of the trial, dead, insane, too ill ever to be expected to attend the trial, or kept away by the connivance of the defendant. This much is conceded by counsel for plaintiffs in error, but

they deny that the common law extended the right to so read a deposition upon proof merely of nonresidence, permanent absence, and inability to procure the evidence of the witness upon the trial. (194 U.S. at page 262, 24 S.Ct. at page 652.)

\* \* \* \* \* \*

"Coming to a decision of the question before us, we are of opinion that no Federal right of the plaintiffs in error was violated by admitting this deposition in evidence. Its admission was but a slight extension of the rule of the common law, even as contended for by counsel. The extension is not of such a fundamental character as to deprive the accused of due process of law. It is neither so unreasonable nor improper as to substantially affect the rights of an accused party, or to fundamentally impair those general rights which are secured to him by the 14th Amendment. The accused has, as held by the state court in such case, been once confronted with the witness, and has had opportunity to cross-examine him, and it seems reasonable that when the state cannot procure the attendance of the witness at the trial, and he is a nonresident and is permanently beyond the jurisdiction of the state, that his deposition might be read equally as well as when his attendance could not be enforced because of death or of illness, or his evidence given by reason of insanity." (194 U.S. at pages 263–264, 24 S.Ct. at page 652).

In Christoffel v. United States, 91 U.S. App.D.C. 241, 200 F.2d 734, the Court of Appeals of the District of Columbia, in its opinion delivered by Judge Fahy, held that the testimony given on a former trial by a witness since deceased, could be read in evidence in a subsequent trial. Judge Fahy said [200 F.2d at pages 741–742]:

"The admission of the duly authenticated transcript of this testimony was permissible as an exception to the hearsay rule. Mattox v. United States, 1895, 156 U.S. 237 at page 240 et seq., 15 S.Ct. 337, 338, 39 L.Ed. 409. In the case cited the claim was made that in a criminal trial the introduction of such previous testimony violated the constitutional right of the accused, protected by the Sixth Amendment, to 'be confronted with the witnesses against him.' The Court held,

"'The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. \* \*' 156 U.S. at page 244, 15 S.Ct. at page 340."

I think there is no evidence at all that the authors of the Constitution intended to abolish the, even at that time, numerous sensible exceptions to the hearsay rule, nor to forbid the creation of additional exceptions which fell within the same reason and purpose as the existing exceptions. In Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, at p. 107, 54 S.Ct. 330, at page 333, 78 L.Ed. 674, Mr. Justice Cardozo, speaking for the Court, said:

"Nor has the privilege of confrontation at any time been without recognized exceptions, as, for instance, dying declarations or documentary evidence. \* \* \* The exceptions are not even static, but may be enlarged from time to time if there is no material departure from the reason of the general rule. \* \* \* Cf. West v. [State of] Louisiana, [194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965.]"

Boellhoff and Krinkevitch were just as unavailable as witnesses as if they had been dead, had become insane, or had left the country where the court was sitting. There is no possible reason why their kind of unavailability should be treated differently from the kinds which occur more frequently.

What we have, then, is evidence which, because of the circumstances under which it had been given in the Court of Inquiry, was trustworthy, and was received by the court-martial. To receive it was an error of law on the part of the court-martial, because of the provision of article 60 that such evidence should be received in "cases not capital, nor extending to the dismissal of a commissioned or warrant officer." But Congress has expressly authorized its admission in all other court-martial cases.

Proper self-restraint on the part of a court, and proper respect for a law enacted by Congress and used for so long in the administration of military justice, persuade us that there has not been revealed to us something which has not been discovered by the Congress, the executive, or the judiciary in the 100 years since the enactment of the questioned statute.

As the Chief Judge shows in his opinion concurring in the dismissal of the plaintiff's petition, the plaintiff failed to assert, in the review of his case by the military authorities, the constitutional grounds which he here relies on. It may be that this failure would be a sufficient reason for the dismissal, by this court, of the plaintiff's petition, regardless of the merits of the constitutional issue. The parties, however, have not adequately briefed the question of the effect of the plaintiff's failure to raise the issue and we are not willing to base the decision upon that ground. Our conclusion is that no violation of the plaintiff's constitutional rights occurred in the court-martial proceedings.

The plaintiff's petition will be dismissed.

It is so ordered.

LARAMORE, Judge, concurs.

JONES, Chief Judge, (concurring).

I concur in the result. Plaintiff contends that his constitutional right to be confronted by the witnesses against him was violated. I believe that because of plaintiff's repeated failure to raise this issue on previous occasions, we should not grant a money judgment in the light of the facts disclosed by this record. Let us examine plaintiff's own performance with respect to securing that right which he urges in this court.

The plaintiff was convicted by a general court-martial in 1948. Plaintiff never raised the point that he had been denied the right to confront the witnesses against him in the first instance, the general court-martial itself. That conviction was successively reviewed by the Judge Advocate General of the Navy and by the Commandant of the Marine Corps. Plaintiff failed to participate in these reviews of his conviction within the Department of the Navy. Plaintiff did not assert any constitutional defect in his court-martial trial in the immediate review of his case by the Navy.

Some five years later, plaintiff bestirred himself for the first time. In a petition to the Judge Advocate General of the Navy on July 24, 1953, plaintiff raised, among other grounds, the issue of whether he had been denied the right of confrontation. The Judge Advocate General refused to consider the petition because the plaintiff had

" \* \* \* neither petitioned for relief within one year after final disposition upon initial appellate review nor within one year after termination of the war."

Plaintiff then on November 12, 1953, petitioned the United States Court of Military Appeals to review his conviction and sentence. Plaintiff's petition was dismissed by that court for lack of jurisdiction. In retrospect, the curious aspect of plaintiff's petition to the United States Court of Military Appeals was that he nowhere complained of deprivation of his constitutional right of confrontation. On September 3, 1954, plaintiff brought his action in this court.

We have before us then a plaintiff who did not stir at all in his own behalf when his case was first reviewed. For five years he was apparently indifferent to whether or not his court-martial was affected with a constitutional defect. By

the time he finally did get around to asking the Judge Advocate General to review his case, the Judge Advocate General had no authority to act. Then plaintiff petitioned the United States Court of Military Appeals. Similarly, that body declared it had no jurisdiction to review plaintiff's case.

Unquestionably courts-martial must afford an accused his constitutional rights. But constitutional rights like all legal rights must be seasonably presented. Here the plaintiff has blown alternately hot and cold on the issue of whether or not he has been denied a constitutional right. Sometimes he has alleged denial. At other times he has made no such allegation. Repeatedly, plaintiff has failed to avail himself at the proper time of the appellate process within the military. In the light of all this, there is hardly sufficient background to permit plaintiff to succeed in his petition to this court for a money judgment.

Plaintiff claims that he was deprived of his constitutional right of confrontation in the general court-martial. I do not think that issue is the decisive one here. I am of the view that the right of the accused to confront the witnesses against him is one of the most fundamental of our freedoms. These freedoms were too dearly bought to be casually exploited. I do not think, however, plaintiff should be permitted to sleep on his rights indefinitely and then, when all else has failed, to invoke the Bill of Rights as an afterthought. See Paraiso v. United States, 207 U.S. 368, 370, 28 S.Ct. 127, 52 L.Ed. 249.

As a civilian court, we must be constantly mindful that we should give due respect to the integrity of the court-martial process. I would underscore the observation of Mr. Justice Jackson in Orloff v. Willoughby, 345 U.S. 83, at page 94, 73 S.Ct. 534, at page 541, 97 L.Ed. 842, in connection with the proper relationship of civil courts to military matters:

"The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."

There are, of course, occasions where it is proper for us to grant recovery, a court-martial notwithstanding. Our jurisdiction arises where a court-martial has acted with such complete disregard of the constitutional rights of an accused that the court-martial is said to have lost its jurisdiction. Shapiro v. United States, 69 F.Supp. 205, 107 Ct.Cl. 650. It would stretch the doctrine set forth in Shapiro far beyond its original and proper bounds to permit all those convicted by courts-martial to secure review in this court merely by uttering a belated claim that the accused has been deprived of a constitutional right at his court-martial.

It would be a disservice to the original purposes of the Shapiro doctrine to permit plaintiff to invoke it here. Particularly is this so where it is by no means clear that in substance plaintiff was actually denied the right of confrontation. It is true that the testimony of Mr. Boellhoff and Mr. Krinkevitch at the Court of Inquiry was admitted in the court-martial although neither of these gentlemen testified in person at the actual court-martial trial. Their stated reasons for declining to testify are set out in finding 15. Our findings show that the plaintiff had the right of confrontation at the Court of Inquiry where Mr. Boellhoff and Mr. Krinkevitch were both present. It is most significant in determining whether or not plaintiff was in fact denied the benefit of the right of confrontation to his prejudice that he declined to cross-examine Mr. Krinkevitch at the Court of Inquiry.

In summary, after the plaintiff has ignored a possible constitutional point at almost every step of the way through the appellate process of the military justice system, we should not permit him to raise it in this court many years later. Our power to disregard the proceedings of courts-martial must rest on

sterner stuff than the mere recitation of a formula.

It is unnecessary to comment on the merits of plaintiff's constitutional argument since he should not be allowed at this late date to raise that argument here.

WHITAKER, Judge (dissenting).

Plaintiff, a colonel in the United States Marine Corps, stationed in China, was convicted by a United States Marine Corps court-martial and, as a part of the sentence was dismissed from the service. He says the court-martial was without jurisdiction to pass this sentence, because it had forfeited its jurisdiction to do so by depriving plaintiff of his constitutional right to be confronted by the witnesses against him. Hence, he says he was unlawfully dismissed and, therefore, is entitled to the pay for which he sues.

Plaintiff asserts grounds other than the denial of the right to be confronted by the witnesses against him, to show the court-martial did not have jurisdiction to pass the sentence, but this is the only one that, in my opinion, has substance.

The question presented to us is whether the alleged violation of plaintiff's constitutional right to be confronted by the witnesses against him deprived the court-martial of jurisdiction to pass sentence on the accused. If it did, plaintiff was unlawfully dismissed, and we have jurisdiction to render judgment for the pay of which he has been unlawfully deprived. On the other hand, if the court-martial had jurisdiction to pass the sentence, we have no jurisdiction to entertain his petition, for we are foreclosed by the judgment of the court-martial, which we have no jurisdiction to review.

The gravamen of the charges against plaintiff was that he got the United States Navy mail service to send to the United States for sale certain merchandise belonging to one Boellhoff, on the pretense that it was plaintiff's personal property, and that he had received through the same channels merchandise shipped from the United States for the said Boellhoff, on the same false representation. Violations of certain Chinese custom regulations were also alleged.

The principal witness against plaintiff was Boellhoff. I think I am warranted in saying that plaintiff could not have been convicted without his testimony. The trial was held in China; Boellhoff was a citizen, subject, a comrade, by whatever name they are called, of the Union of Soviet Socialist Republics; he refused to testify at the court-martial proceedings, and could not be compelled to do so. However, when wind of plaintiff's alleged activities came to the attention of plaintiff's superiors, a court of inquiry was appointed to investigate the matter. It was apparent that Boellhoff's testimony was of paramount importance. So, the Marine Corps requested the assistance of the Chinese police in securing his testimony. The Chinese police arrested Boellhoff, put him in jail and held him incommunicado for some eight or nine days, and then brought him before a United States court of inquiry, which proceeded to interrogate him about the matter. His testimony was taken down and transcribed. When Boellhoff refused to testify in the court-martial proceedings, the transcript of his testimony before the court of inquiry was offered by the prosecution and was received in evidence, over plaintiff's objection.

Plaintiff objected on the ground that Article 60, Articles for the Government of the Navy, were not satisfied in this case, and that Boellhoff's testimony before the court of inquiry was not voluntary. Plaintiff filed a brief in support of his position, to which the judge advocate replied, and plaintiff filed a reply brief.

Plainly the testimony was not admissible under Article 60, supra. That article permits the introduction in evidence before a court-martial of testimony taken in court-of-inquiry proceedings only in cases not capital and not involving the dismissal from the service of a commissioned or warrant officer; plaintiff was dismissed from the service. But this is not determinative of the question pre-

sented. The admission of incompetent evidence does not deprive the court-martial of jurisdiction to pass sentence unless the admission of it deprives the accused of a constitutional right.

Plaintiff says its admission in evidence violated the constitutional right of an accused to be confronted by the witnesses against him; and, when the court-martial deprived him of this constitutional right, it then and there lost jurisdiction to proceed further.

The right of an accused to be confronted by the witnesses against him is one of the most sacred of the cherished rights of free men. It is imbedded in the Bill of Rights. It has been jealously guarded by the bench and bar for centuries of Anglo-Saxon jurisprudence. However heinous the crime of the accused, however much the finger of suspicion points toward him, no affidavit, no deposition of a missing witness is admitted in evidence against him; the witness must be there in person, to look the accused in the eye and, under his scrutiny, to make his accusations against him; and to subject himself to cross-examination by the accused and his counsel.

There is no substitute for this opportunity to cross-examine a witness. It is the best of all ways to test a witness' credibility, and this cross-examination must be conducted in the presence of those who are trying the accused, so they can observe the witness and make up their own minds what manner of man he is, whether he is evasive or straight-forward, whether his manner and demeanor inspires confidence in what he says, whether it shows him to be a man of passion or prejudice, or one speaking without bias, a man honestly and sincerely trying to tell the truth, the whole truth, and nothing but the truth. The writer of this dissenting opinion will never forget the sound philosophy of the remark of one negro to another, in the course of their argument many years ago, "Boy, what you are speaks so loud, I can't hear what you say." A witness' manner and demeanor on the stand is as important as what he says. No court-martial, nor any other court, can know whether or not to give full credit to a witness unless it sees him when he is testifying. This is the reason the prosecution is not permitted to introduce depositions, although the accused cross-examined the deponent.

The testimony before the court of inquiry was subject to the vice that the judges on the court trying the accused did not see this witness against him when he was testifying.

The court of inquiry was sort of a "shotgun" proceeding. There had been rumors, whisperings, tales going around, some accusations, perhaps, but no one knew whether they had any basis in fact. So a court of inquiry was appointed to look into the matter to see whether any charges should be preferred. It was much in the nature of a grand jury proceeding—with this exception, however, that the person under suspicion had the right to be present and hear what the witnesses had to say and to interrogate them himself.

The proceedings were exploratory; they were not aimed in any particular direction; they ranged a wide field; some things said were relevant to charges that might later be preferred; others not. No one was on trial; the court had no power to punish and the proceedings were loose and informal, with little observance of the rules governing the admissibility of evidence on a formal trial before a court with the power of imposing sentence. The witnesses had their say and those implicated had the right to ask them questions, in the hope that they might be exonerated. But these questions could not be aimed at specific charges; none had been preferred. The accused was not advised in advance of what might be brought out against him and had had no opportunity to prepare himself to ask the questions that might bring out facts that would explain, modify or contradict statements the witness had made. He was not prepared to adequately cross-examine the witness.

Later, six or seven definite charges were preferred, supported by one or more specifications. Plaintiff has never been accorded the right to interrogate these

two witnesses [1] with respect to these specific charges and specifications. That right has been denied him. That right was guaranteed to him by the Constitution. Those who tried him had no opportunity of hearing what these witnesses had to say about these charges and specifications, nor of seeing them on the stand, of observing their manner and demeanor. The Constitution guaranteed to an accused that the judges who tried him should have the opportunity of hearing what the witnesses had to say about the charges preferred and of seeing them when they were testifying, to judge for themselves whether they were telling the truth, and whether their testimony supported the charges preferred.

We are living in a changing world, in a day of revolution, but there are certain principles that are immutable (see Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 3 L.Ed.2d 1377), that cannot be surrendered or impaired, if we wish to maintain our tradition of justice under law. The right of an accused to be confronted, in the court that is trying him, by the witnesses against him is not the least of them.

There can be no doubt that plaintiff has been deprived of this constitutional right. It is a right contained in the same sentence of the Sixth Amendment in which an accused is also guaranteed the right of counsel, and the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, said that a court which denied the accused the right of counsel lost its jurisdiction to sentence him. On the authority of this case I would hold that by the admission in evidence in the court-martial proceedings of this testimony before the court of inquiry, in violation of the right of the accused to be confronted by the witnesses against him, the court-martial lost jurisdiction to proceed further.

I do not think Graham v. United States, 136 Ct.Cl. 324, is controlling in this case, because Graham did not object to the introduction of the testimony before the court of inquiry; plaintiff in this case did object. When, in the Graham case, the judge advocate offered only the evidence taken after Graham became a party to the proceedings, Graham insisted that all of it be put in evidence. He thereby waived his constitutional rights. Plaintiff in this case never waived his rights, but objected throughout to the admission of this testimony.

In Mullan v. United States, 212 U.S. 516, 29 S.Ct. 330, 53 L.Ed. 632, it was held that an accused might waive this constitutional right and might validly consent that testimony received before a board of inquiry should be received in evidence in subsequent court-martial proceedings.

The clear intimation from the opinion in the Mullan case is that, in the absence of consent or waiver, the introduction of the evidence taken at the board-of-inquiry proceedings would violate the accused's constitutional right to be confronted by the witnesses against him and that this would oust the court of jurisdiction to pass sentence. This was an appeal from the judgment of this court dismissing petitioner's suit for pay.

In the Graham case the court considered the question as if it were nothing more than an error in the admission of evidence and said that we had no jurisdiction to review matters of that sort. This is quite true, unless the admission of evidence deprives the accused of a constitutional right. The Court did not deal with this question. It is squarely presented in the case at bar.

I am not unaware that the Supreme Court in Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409; held that the testimony of a witness in a former trial of the accused might be introduced in evidence in a subsequent trial, where the witness had died before the subsequent trial. But this is not controlling here. In the first place, the

---

1. The testimony of another witness before the court of inquiry was also read in the court-martial proceedings.

charge against the accused was the same in both trials. Therefore, the cross-examination in the former trial was directed to the same issue being tried in the second. On the other hand, in the court-of-inquiry proceedings in the case at bar no charges had been preferred and, hence, there could have been no cross-examination with respect to the specific charges upon which the accused was tried later on. The accused, therefore, did not have an opportunity to adequately cross-examine the witnesses. Not having been apprised of what might be brought out in the court-of-inquiry proceedings, the accused had had no opportunity to prepare his cross-examination.

The Court of Appeals for the District of Columbia Circuit in Christoffel v. United States, 91 U.S.App.D.C. 241, 200 F.2d 734, at pages 741 and 742, recognizes that the rule laid down in Mattox v. United States, supra, assumes that the charges against the accused in the two trials are the same. After quoting from the Mattox opinion, the Court of Appeals said:

"The rule thus approved assumes that the issue on the first trial is the same as on the later, otherwise the right of cross-examination has not been fully available. In the case at bar the second trial was upon the same indictment as the first. In a very literal sense, therefore, the ultimate issue was the same."

Mattox v. United States, supra, is not controlling here for another reason: The testimony received in evidence in that case had been given before a judge and jury which had the power to try, convict, and punish the accused, and they had convicted him. Those who had the power of punishment, therefore, had the opportunity of observing the manner and demeanor of the witness while he was under cross-examination. Here the court-martial which convicted the accused had no opportunity to observe these witnesses while testifying. This, in my opinion, is a fatal objection to the admissibility of the testimony. It is true that in some of the States this is not considered necessary, but it is to be observed that the provision for confrontation in the Federal Constitution is not applicable to trials in a State court under State law. West v. State of Louisiana, 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965.

The Mattox decision is not controlling here for still another reason: In that case the witness was dead; whereas in this case the witnesses were present in the court room, but refused to testify for fear of possible prosecution of them for acts disclosed by their testimony. A refusal to testify presents a very different situation from an inability to testify. Why did they refuse to testify? Surely not because they were unwilling to reiterate what they had said before the court of inquiry. That testimony was already available for use against them and they could not have been harmed by a reiteration of it. Was it because something new might be elicited from them, something that had not come out in the court-of-inquiry proceedings? Would this testimony have explained or modified their former testimony? Would it have been helpful to the accused? There is some indication that it might have been. Boellhoff said at the court-martial proceedings.

"I am sorry that I cannot be able to clarify questions which might clear also the defendant in some charges which he probably has against him."

How can we know, in the face of their refusal to testify further, that their testimony before the court of inquiry was the whole truth?

Boellhoff's testimony before the court of inquiry had been obtained under duress. He had been kept in jail for eight or nine days without having been permitted to see anyone, and brought from the jail before the court of inquiry. When, at the time of the court-martial no charges were pending against him and he was no longer in custody, would he reaffirm that testimony? We do not know what he would say. When called in the court-martial trial, he would nei-

ther affirm nor deny his former testimony.

Such testimony cannot be given full credence. If ever there was a case where the witnesses should be subjected to rigid cross-examination, this is it. If there ever was a case where the judges should observe their manner and demeanor when testifying, this is it. Boellhoff was evidently holding something back. Whatever it is, it should be brought to light before credence is given to anything he says.

If under such circumstances their piecemeal testimony before this inquisitorial body is admitted, I cannot escape the conclusion that plaintiff has been deprived of his constitutional right to be confronted by the witnesses against him, before the judges who try him and pass sentence upon him.

In Begalke v. United States, Ct.Cl., 286 F.2d 606, decided January 20, 1960, we held that, if the court-martial and the reviewing authorities had given full and fair consideration to the claim of the accused that he was being deprived of his constitutional rights, it was not incumbent on a civil court to go over the same ground again. We said we understood this to be the holding of the Supreme Court in Burns v. Wilson, 346 U. S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508. That, at least, was the view of the Chief Justice and three other Justices who concurred in his opinion. A Justice who concurred in the judgment of the Court thought there was no right of review of the court-martial by civil tribunals. The two Justices who dissented thought that it was incumbent on civil courts to take cognizance of a habeas corpus application to determine for themselves whether there had been a violation of constitutional rights, where the military tribunal had not "fairly and conscientiously" given consideration to the question.

In that case it appeared that the court-martial itself had considered the constitutional question and that it had been extensively discussed in an opinion by the Board of Review. Plaintiff's petition for modification of the sentence was denied by the Court of Military Appeals. Under such circumstances we said the civil courts would not again consider the question.

However, there is no such showing in this case. We only know that plaintiff filed with the court-martial a brief on the question, to which the judge advocate replied. The accused then filed a reply brief. We are told that the court-martial cleared the court room in order to consider the question; but to what extent they considered it is not disclosed. We are not told whether the matter was considered by the reviewing authority, or by the Board of Review, or by the Judge Advocate General. The Court of Military Appeals refused to entertain plaintiff's appeal, for lack of jurisdiction. I think that where the accused asserts that his constitutional rights are being violated, the requirement of Burns v. Wilson, supra, that the military authorities must give "fair and conscientious" consideration to the question is not satisfied unless the question is considered, not only by the court-martial itself, but also by the reviewing authorities. The court-martial itself is composed of laymen naval officers; not lawyers. They are not familiar with the constitutional guaranties of the Bill of Rights, nor alert to prevent a violation of them. There is no one in the military hierarchy competent to judge whether the constitutional rights of an accused have been violated other than the reviewing authorities.

Now, I think, where an appeal is made to a civil court for protection of the constitutional rights of an accused, and it appears to that court that those rights have probably been violated, and where the record does not show that the military courts and reviewing authorities have given full and adequate consideration to the matter, it is incumbent on the civil court to afford the accused the protection guaranteed him by the Constitution, insofar as it has power to do so, or to give him such relief as it may for the deprivation of his constitutional rights.

There is no such showing in this case, and it appears to me that there has been a gross violation of plaintiff's constitutional right to be confronted, in the court that tried him and passed sentence on him, by the witnesses against him. Under the holding of Johnson v. Zerbst, supra, this denial of plaintiff's constitutional right ousted the court of jurisdiction to pass sentence upon him.

The Chief Judge says plaintiff did not raise in the court-martial proceedings the objection that he had been denied the right to be confronted by the witnesses against him. I think he is mistaken in this. He objected to the admission of this evidence on the ground that it violated article 60 of the Articles of War. This article limits the right of an accused to be confronted by the witnesses against him. It permits the introduction into evidence in the court-martial proceedings of testimony given before a court of inquiry in cases of minor importance. To this extent it is in derogation of the constitutional rights of an accused. But it preserves this constitutional right in the graver offenses, capital offenses, or offenses involving the dismissal of an officer. When, therefore, plaintiff objected to the admission of this evidence against him because it was in violation of article 60 of the Articles of War, this was tantamount to objecting because it violated his constitutional right to be confronted by the witnesses against him.

In my opinion plaintiff did not waive his constitutional right, but insisted upon it.

The Chief Judge seems to think that he waived it by not insisting upon it in a brief filed with the reviewing authorities. Plaintiff filed nothing with the reviewing authorities. Indeed, so far as I am aware, the Manual for Courts-Martial makes no provision for the filing of briefs with the reviewing authorities, although briefs are accepted when filed. Since plaintiff made his objection before the court-martial and filed briefs in support thereof, I do not think his omission to reiterate the objection in a brief filed with the reviewing authorities can be considered to be a waiver of the objection. When he did file a petition for relief from the judgment on July 24, 1953, he did insist that his constitutional rights had been violated because he had been denied the right to be confronted by the witnesses against him.

After mature reflection, I have come to the conclusion that plaintiff did not waive his constitutional rights; I think they have been denied him, and that the denial of them deprived the court-martial of jurisdiction to pass sentence on plaintiff. If so, he has been illegally dismissed from the service, and I think he is entitled to recover the pay of which he has been wrongfully deprived.

I am authorized to say that Judge DURFEE joins me in this opinion.