Winfield H. LYON, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 26189.

United States Court of Appeals
Fifth Circuit.

June 26, 1969.

Winfield H. Lyon, Jr. pro se.

Robert C. Josefsberq, Miami, Fla.,
(Ct.Apptd.), for appellant.

Wm. A. Meadows, Jr., U. S. Atty., Michael J. Osman, Asst. U. S. Atty., Miami, Fla., for appellee.

Before JOHN R. BROWN, Chief Judge, and GEWIN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge.

The appellant, Winfield H. Lyon, Jr., was convicted in the United States District Court for the Southern District of Florida on eight counts of a ten-count indictment charging fraudulent use of

the mail in violation of 18 U.S.C. § 1341 (1964). He received a sentence of six months' imprisonment to be followed by two years' probation.

The trial below was the Government's second effort to convict the appellant of the offense charged. A previous attempt had ended in a mistrial when the jury was unable to reach a verdict. Among the witnesses called by the Government at the first trial was one Adderley, a citizen of Nassau, Bahamas, and a practicing attorney there. Adderley was not present at the second trial and, as a result, the Government was allowed, over the appellant's objection, to introduce the official transcript of Adderley's prior testimony.

The single issue presented on this appeal is whether this use at the second trial of Adderley's prior testimony violated the appellant's sixth amendment right of confrontation. The amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." Courts have traditionally recognized, however, that the right of confrontation is satisfied

> where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant.[1]

The rationale of this view of the confrontation clause was articulated by the Supreme Court in the early case of Mattox v. United States:

> To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed the mouth of that witness, would be carrying his constitutional protection

to an unwarrantable extent. The law, in its wisdom, declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.

> \* \* \* \* \* \*

> The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. This, the law says, he shall under no circumstances be deprived of \* \* \*.[2]

The appellant urges that the confrontation clause was not satisfied in the case *sub judice* for two reasons: (1) the witness, Adderley, was not "unavailable" and (2) the appellant was denied an adequate opportunity to cross-examine him. After careful consideration of the appellant's position, we conclude that, for the reasons discussed below, his contentions must fail and that the introduction of Adderley's prior testimony was not reversible error.

### I

In Barber v. Page, the Supreme Court held that a witness is not "unavailable" for the purpose of introducing his prior testimony unless "the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."[3] The Court determined that the absent witness in *Barber* was not "unavailable" because the state authorities had made no attempt to have the witness, who was then imprisoned in another state, present at the trial. The Court recognized that success in obtaining the witness would depend upon the cooperation of a sister state, but noted that "the possibility of a refusal is not the

1. Barber v. Page, 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968); *See* Mattox v. United States, 156 U.S. 237, 240–244, 15 S.Ct. 337, 39 L.Ed. 409 (1895); Peterson v. United States, 344 F.2d 419, 423–424 (5th Cir. 1965).

2. 156 U.S. 237, 243–244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895).

3. 390 U.S. 719, 724–725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). The trial proceedings in the case now before us occurred prior to the *Barber* decision. However, the principles articulated in *Barber* have been given retroactive application. Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

equivalent of asking and receiving a rebuff."[4]

The record before us contains some indication that the prosecutor asked and was rebuffed; however, because of the position taken by defense counsel at the trial, we find it unnecessary to determine whether the record is sufficiently replete to establish the good-faith effort required by *Barber*.[5]

As the appellant's second trial was about to commence, the prosecutor addressed the court as follows:

> We have made attempts to make arrangements with Mr. Adderley to be here and testify in this case. He is presently involved in a lengthy case in Nassau, so he will be unable to attend.
>
> In view of that, I feel I can proffer evidence to the Court indicating our efforts to have him here and his inability to attend. * * *
>
> *  *  *  *  *  *
>
> Last week he indicated to me that he would be here if his case did not go to trial.

The prosecutor expressed a desire to proffer immediately the evidence of his attempt to have Adderley present and to obtain a pre-trial ruling on the admissibility of the testimony, indicating that if the ruling should be adverse to the Government, it would seek a continuance. However, the court refused either to hear the evidence or to make an evidentiary ruling at that time. The appellant offered no suggestion as to how the court should proceed nor made any objection to its determination to commence the trial.

Once the Government's case had proceeded to the point at which the prosecutor wished to introduce Adderley's prior testimony, he *again offered to present* evidence of his attempts to have Adderley present. The court reacted by asking defense counsel what his position was concerning the introduction of the prior testimony. Counsel responded that he did not take issue with the prosecutor's representation that he had attempted to produce Adderley. He objected to the use of the testimony, however, on the ground that the issues at the first and second trials were not the same and that, therefore, introduction of the testimony would deny the appellant an opportunity for full and complete cross-examination. After stating this ground of objection, defense counsel was engaged by the court in the following colloquy concerning Adderley's unavailability:

The Court: What is your position on that, Mr. Rosen?

Mr. Rosen: As to his representation to the Court?

The Court: Yes.

Mr. Rosen: He is not available for subpoena, being a non-resident and not being in the country.

The Court: You are resting on your proposition that to use his prior testimony is prejudicial to your client for the reasons you have pointed out?

Mr. Rosen: Absolutely.

The Court: You do not challenge the authenticity of the testimony as was prepared by the Reporter, *nor the unavailability of the witness?* [Emphasis added.]

4. Barber v. Page, 390 U.S. 719, 724, 88 S. Ct. 1318, 1322, 20 L.Ed.2d 255 (1968).

5. The Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, prepared by a committee of the Judicial Conference of the United States, defines "unavailability" in part as follows:

(d) Unavailability. "Unavailability as a witness" includes situations in which the declarant is:

(4) Absent from the hearing and beyond the jurisdiction of the court to compel appearance and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance.

Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, at 160 (1969). It may well be that the record in the case *sub judice* satisfies this definition of unavailability.

Mr. Rosen: I do not, your Honor.

In view of this position taken by defense counsel, we hold that the appellant is precluded from complaining on appeal that the Government did not carry its burden of proving Adderley's unavailability.[6] The Government appeared ready, willing, and even eager to proffer evidence of its attempt to have Adderley present. Defense counsel's statements, however, made it appear that such a proffer was unnecessary. Counsel admitted that the witness was not available for subpoena; he stated that he did not take issue with the prosecutor's representation that he had attempted to have Adderley present; and he indicated, finally, that he did not challenge the unavailability of the witness. In these circumstances, the trial court was justified in requiring nothing more from the Government to establish unavailability.[7]

## II

Although appellant's trial counsel extensively cross-examined Adderley at the first trial, the appellant contends that he was afforded no opportunity to cross-examine Adderley on new matters in issue at the second trial. This contention arises from the fact that subsequent to the appellant's first trial, the indictment against him was dismissed and a new one returned which differed in part from the original.

It is generally stated that the issue on the occasion when the testimony is originally taken must be substantially the same as the issue on the occasion when the testimony is subsequently offered.[8] This rule recognizes that if the opportunity to cross-examine at an original proceeding is to be a meaningful substitute for the opportunity to cross-examine in a subsequent trial, then the purpose for which the testimony was originally offered and the purpose for which it is offered at the subsequent proceeding must be so similar in nature that the incentive to cross-examine and the motive of the cross-examination are substantially the same at each proceeding. Accordingly, this court held in Peterson v. United States[9] that testimony, originally offered against the defendants for the purpose of proving substantive violations of the internal revenue laws, was inadmissible when, upon retrial, a conspiracy count was added to the indictment and the prior testimony was offered for the purpose of proving the conspiracy.

Relying heavily upon *Peterson*, the appellant urges that the changes in the new indictment rendered hollow his opportunity to cross-examine Adderley. We cannot agree. Moreover, we see a

---

6. The appellant does not assert, nor could he successfully, that the position taken by defense counsel on the matter of unavailability effected the waiver of a constitutional right. The appellant's constitutional *right of confrontation was vigorously and ably asserted by counsel.* Faced with statements by the prosecutor that he had attempted to have the absent witness present but failed because he was outside the jurisdiction and requests by the prosecutor that he be allowed to prove his statements defense counsel apparently made a tactical and procedural determination that a showing of unavailability was inevitable, if not already made, and that rather than pursue a lost cause he should press what he considered to be his stronger argument concerning cross-examination. *See* Henry v. Mississippi, 379 U.S. 443, 451, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

7. The District of Columbia Circuit reached a similar result in Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F.2d 128, 132–133 (1962), rev'd on other grounds, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). There, *defense* counsel had stated to the trial court: "I certainly accept Mr. Flannery's word. I have no doubt that the witness is unavailable." The court held that this foreclosed a contention on appeal that the Government failed to establish the witness's unavailability.

8. 5 Wigmore, Evidence §§ 1387, 1937 (3d ed. 1940); *See* Peterson v. United States, 344 F.2d 419, 423–424 (5th Cir. 1965); Christoffel v. United States, 91 U.S.App. D.C. 241, 200 F.2d 734, 741–742 (1952).

9. 344 F.2d 419, 423–424 (5th Cir. 1965).

significant factual distinction between *Peterson* and the case now before us. The new indictment in *Peterson* charged a completely new and different offense from the one charged in the original indictment. On the other hand, the new matter contained in the second indictment against the appellant was merely, for the most part, a more detailed description of the offense previously charged. The issues at both trials were substantially the same.

At each of the appellant's trials, the Government sought to prove a scheme devised and executed by the appellant to defraud the Mellon National Bank and Trust Company of Pittsburgh, Pennsylvania. Evidence was offered to show that the appellant promoted the incorporation of the American Security Bank and Trust Company, Limited, in Nassau, a company which used a Nassau address, but maintained no banking facilities there. Bank mail arriving in Nassau was redirected to the appellant in Miami, Florida. It was the Government's theory that the appellant deposited to his account at the Mellon National Bank and Trust Company in Pittsburgh a series of checks drawn by him on the American Security Bank and Trust Company knowing that, upon receipt of the checks by the Pittsburgh bank, his account there would be credited immediately for the amount of the checks and that the checks would then be mailed to the bank in Nassau for collection and that upon arriving in Nassau, they would be redirected to him in Miami. The appellant then executed personal checks drawn against his account at the bank in Pittsburgh and the checks were honored because of the credit created by the appellant's deposit of checks drawn by him on the nebulous institution in Nassau.

The gist of Adderley's testimony was that the appellant and another person employed him to incorporate in Nassau the American Security Bank and Trust Company. Adderley's testimony also revealed that his address in Nassau was Post Office Box 4, the same address used by the American Security Bank and Trust Company and that he redirected to the appellant in Miami the bank mail which came to that address.

The Government states in its brief that the purpose of Adderley's testimony at each trial was to establish the means by which bank mail was redirected from Nassau to Miami. We agree that, although the indictments differed somewhat, Adderley's testimony served the same purpose at both trials. The differences in the indictments were, as far as Adderley's testimony was concerned, insignificant.[10] The second indictment described in a more detailed manner than the first the fraudulent scheme which the Government sought to prove; nevertheless, both indictments charged the same scheme. The new indictment charged that the fraudulent activity commenced in May 1965 instead of August 1965, as originally alleged, and, unlike the first indictment, the second named a specific mailing address used by the American Security Bank and Trust Company and in the allegation concerning the redirection of bank mail from Nassau to Miami added that the mail was redirected *unopened*. We are convinced that the minor changes found in the new indictment did not render the appellant's opportunity to cross-examine Adderley at the original proceedings inadequate as a meaningful substitute for the opportunity to cross-examine him at the second trial.

For the reasons we have stated, the judgment of conviction is affirmed.

10. Among the differences in the indictments were two additional counts contained in the new indictment. These new counts each charged mailings by the appellant to the Mellon National Bank and Trust Company which had not been charged previously. The appellant was acquitted on each of these new counts. Consequently, any error which might have resulted from the addition of these counts was harmless.